**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Big Bear Import Brokers, Inc. d/b/a Glow Machine, an Arizona corporation,<br><br>Plaintiff,<br><br>vs.<br><br>LAI Game Sales, Inc., et al.,<br><br>Defendants. | No. CV-08-2256-PHX-DGC<br><br><br>**ORDER** |

Plaintiff Big Bear Import Brokers, Inc. has filed a motion for partial summary judgment. Dkt. #37. Defendant LAI Game Sales, Inc. has filed a motion for summary judgment. Dkt. #33. Both motions are fully briefed. Dkt. ##41, 43, 35, 39. For reasons that follow, the Court will deny Big Bear's motion for partial summary judgment (Dkt. #37) and grant in part and deny in part LAI's motion for summary judgment (Dkt. #33).[1]

**I.    Background.**

LAI is a manufacturer, promoter, and seller of gaming machines. Big Bear is a manufacturer and seller of arcade-type games. In April of 2008, a sales representative from LAI, Chad Hughes, met the president of Big Bear, Aaron Pelto, at a trade show. Dkt. #37 at 2. Pelto and Hughes had several meetings and conversations about the possibility of Big Bear becoming a distributor of one of LAI's most popular gaming machines – the "Stacker."

---

[1] Big Bear's request for oral argument is denied. The parties have fully briefed the issues and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

Dkt. #33 at 3; Dkt. #35 at 3. At the end of the trade show, Hughes gave Pelto a Stacker distributor price sheet and, after the trade show, Pelto flew to Texas to meet with Hughes to further discuss Big Bear becoming a distributor. Dkt. #35 at 4. The two came to an informal agreement and Hughes asked Pelto to prepare a contract (the "Purchase Contract"). *Id.* Pelto drafted the Purchase Contract and sent it to Hughes, who signed it and sent a copy back to Pelto. *Id.*

After receiving the signed Purchase Contract, Big Bear undertook preparation to begin distributing Stacker machines, which, according to Big Bear, resulted in substantial costs. Dkt. #37 at 4. On May 1, 2008, Big Bear placed an order for 20 Stacker machines, which LAI filled. Dkt. #33 at 4. Only a few months after sending the Stacker machines to Big Bear, however, LAI was "inundated with minor service and set up issues on some of the games purchased by Big Bear's few existing customers." *Id.* According to LAI, for that and other reasons, it informed Big Bear in July that it would not sell it more Stacker machines. *Id.* Soon after, LAI learned of the Purchase Contract that had been signed between Hughes and Big Bear. *Id.* at 5. LAI reaffirmed that it would supply no additional machines, and on October 8, 2008, Big Bear filed this lawsuit in state court, alleging breach of contract, breach of the covenant of good faith and fair dealing, and promissory estoppel. Dkt. #1. LAI removed the case to this Court on the basis of diversity jurisdiction. Dkt. #1.

**II.  Legal Standard.**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Jesinger*, 24 F.3d at 1130. In addition, the dispute must be genuine, that is, the evidence must be "such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322; *see Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. *Celotex*, 477 U.S. at 323.

**III. Analysis.**

LAI has moved for summary judgment on all claims. Big Bear has moved for summary judgment on the breach of contract claim. The Court will grant summary judgment to LAI on the breach of contract claim and the breach of implied covenant claim and will deny it as to the promissory estoppel claim and damages.

**A. Breach of Contract.**

To prevail on a breach of contract claim, a plaintiff must prove the existence of a contract between the plaintiff and the defendant, a breach of the contract by the defendant, and resulting damage to the plaintiff. *See Coleman v. Watts*, 87 F. Supp. 2d 944, 955 (D. Ariz. 1998) (citing *Clark v. Compania Ganadera de Cananea, S.A.*, 387 P.2d 235, 237 (Ariz. 1963)). LAI asserts that the parties did not have an enforceable contract because (1) Hughes, as a mere employee, had no authority to form the Purchase Contract on LAI's behalf, (2) Big Bear provided no consideration, (3) the contract is barred by the statute of frauds, and (4) the Purchase Contract is unconscionable. Big Bear seeks summary judgment on its breach of contract claim because (1) Hughes had authority to enter the Purchase Contract, (2) LAI ratified the Purchase Contract, and (3) LAI breached the Purchase Contract. The Court agrees that Big Bear provided no consideration for the Purchase

Contract and that, as a result, there was no valid contract between LAI and Big Bear.[2]

To be enforceable, a contract must have adequate consideration and specification of terms so that the obligations of each party can be ascertained. *Rogus v. Lords*, 804 P.2d 133, 135 (Ariz. App. 1991). Mutuality of obligation is required and, significantly for this case, "is absent when only one of the contracting parties is bound to perform." *Carroll v. Lee*, 712 P.2d 923, 926 (Ariz. 1986). "'Parties are, within reason, free to contract as they please, and to make bargains which place one party at a disadvantage; but a contract must have mutuality of obligation, and an agreement which permits one party to withdraw at his pleasure is void.'" *Shattuck v. Precision-Toyota, Inc.*, 566 P.2d 1332, 1334 (Ariz. 1977) (quoting *Naify v. Pac. Indem. Co.*, 76 P.2d 663, 667 (Cal. 1938), and citing *Eaton Factors Company, Inc. v. Bartlett*, 24 Conn.Sup. 40, 42-43, 186 A.2d 166, 168 (1962) ("[T]o agree to do something and to reserve the right to cancel the agreement at will is no agreement at all[.]") (quotation omitted)).[3]

The Purchase Contract did not obligate Big Bear to render any performance. Instead, Big Bear could withdraw from the contract at any time, for any reason, and never purchase Stacker machines at all. *See* Dkt. #42-1 at 3-4 ("[Big Bear] may terminate this Contract at any time by providing written notice of termination," but LAI can terminate only for insolvency, fraud, assignment, or bankruptcy.). As a result, the Purchase Contract is illusory and void. *Shattuck*, 566 P.2d at 1334 ("[A]n agreement which permits one party to withdraw at his pleasure is void.").

Big Bear argues that the Court should interpret the contract as a valid requirements contract which obligated it to buy its requirement of Stacker machines from LAI for a period

---

[2] Because the Court agrees that there was no consideration for the Purchase Contract, the Court will not consider the other arguments by Big Bear and LAI.

[3] Big Bear does not disagree with this principle of law. Instead, Big Bear relies heavily on this Court's decision in *AGA Shareholders, LLC v. CSK Auto, Inc.*, 589 F. Supp. 2d 1175 (D. Ariz. 2008), to argue that the Purchase Contract language and extrinsic evidence combine to show a five-year requirements contract. *AGA Shareholders* will be discussed below.

five years. Dkt. #35 at 9. "Interpretation of a contract is a question of law for the court when its terms are unambiguous on its face." *Ash v. Egar*, 541 P.2d 398, 401 (Ariz. App. 1975). Under Arizona law, the Court should consider any relevant extrinsic "evidence and, if . . . the contract language is 'reasonably susceptible' to the interpretation asserted by its proponent, the evidence is admissible to determine the meaning intended by the parties." *Taylor v. State Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134, 1140 (Ariz. 1993).

The Purchase Contract in this case is not reasonably susceptible to the interpretation asserted by Big Bear – that Big Bear could not cancel at will, but instead was bound to a five-year requirements contract. Although the contract does state that it "shall remain in force for five (5) years," it immediately qualifies this term by stating "unless sooner terminated as provided herein." Dkt. #42-1 at 3. The next paragraph provides that "[Big Bear] may terminate this Contract at any time by providing written notice of termination." *Id*. The extrinsic evidence put forward by Big Bear – that its purpose in entering the agreement was to become a distributor for LAI, that it would not have ordered LAI's machines unless it had such an agreement, that it only intended to purchase products from LAI, and that LAI intended that Big Bear become a new distributor – does not alter the plain language that empowered Big Bear to terminate the contract at any time, for any reason. Dkt #35 at 11-12. And because that plain language is not susceptible to an interpretation that in effect reads it out of existence, the contract gave Big Bear the right to terminate at will and therefore is invalid under Arizona law. *Shattuck*, 566 P.2d at 1334 ("[A]n agreement which permits one party to withdraw at his pleasure is void.").

Big Bear relies heavily on this Court's decision in *AGA Shareholders,* 589 F. Supp. 2d 1175. The decision in *AGA* looked to the language of the AGA-CSK contract, extrinsic evidence of the parties' intent, and the parties' course of dealing before and after the contract was signed to hold that the contract was a valid five-year requirements contract. These factors made clear that the parties intended a contract in which CSK would purchase all of its requirements from AGA for a five-year period. *Id*. at 1180-85. Significantly, the contract language in *AGA* was susceptible to this interpretation. *Id*. at 1184 ("the language used in

- 5 -

the Agreement adequately reflects the requirements nature of the contract"). Indeed, the Court recognized that extrinsic evidence of the parties' intent is relevant only if "'the contract language is "reasonably susceptible" to the interpretation asserted by its proponent[.]'" *Id*. at 1181 (quoting *Taylor*, 854 P.2d at 1140). The contract in *AGA* did not provide that one party could terminate at will, and the litigants never argued that the contract was void for lack of consideration under *Shattuck*, 566 P.2d at 1334. *AGA* thus did not address the issue raised in this case.

The Court concludes that the clear and unambiguous language of the Purchase Contract empowered Big Bear to cancel the contract at will. The language of the contract simply is not susceptible to the contrary interpretation – that Big Bear could not terminate the contract at will. Because such a provision renders the contract void under Arizona law, Big Bear may not prevail on its breach of contract claim.

**B.     Breach of the Implied Covenant.**

LAI contends that it is entitled to summary judgment on this claim because there was no valid contract. The Court agrees. The implied covenant of good faith and fair dealing cannot be breached if the parties did not enter into a valid contract. *See Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 28 (Ariz. 2002). Summary judgment will be granted to LAI on this claim.

**C.     Promissory estoppel.**

LAI also argues that it is entitled to summary judgment on Big Bear's claim for promissory estoppel. To prevail on a claim for promissory estoppel, a plaintiff must prove (1) that the defendant made a promise, (2) that it was reasonably foreseeable that the plaintiff would rely on the promise, and (3) that the plaintiff relied on the promise to his detriment. *Higginbottom v. State*, 51 P.3d 972, 977 (Ariz. App. 2002). LAI claims that Big Bear cannot prevail on a claim for promissory estoppel because LAI made no promise – only Hughes made a promise, and he had no authority to act on behalf of LAI. Dkt. #33 at 13. Big Bear contends that Hughes had authority to act on behalf of LAI and, in any event, the question is one of fact for the trier of fact at trial.

Under Arizona law, a principal is not liable for actions of an agent unless the actions are based on one of two kinds of authority: actual authority or apparent authority. *O.S. Stapley Co. v. Logan*, 431 P.2d 910, 913 (Ariz. App. 1967). Generally, for an agent to have actual authority to act on a principal's behalf, the principal must have given explicit permission to the agent. *Ruesga v. Kindred Nursing Ctrs. W., L.L.C.*, 161 P.3d 1253, 1261 (Ariz. App. 2008). Hughes did not have actual authority to enter the Purchase Contract on behalf of LAI.

Actual authority can be proven in two ways (1) through express authority in which a "'principal has stated in very specific or detailed language'" that an agent has authority, or (2) through implied authority in which an agent has authority "'to act in a manner in which an agent believes the principal wishes the agent to act based on the agent's reasonable interpretation of the principal's manifestations.'" *Ruesga*, 161 P.3d at 1261 (quoting Restatement (Third) of Agency § 2.01 cmt. b). LAI has provided undisputed evidence that Hughes did not have authority to enter into the Purchase Contract and that, at the time he signed it, he knew he did not have such authority. Dkt. #42-1 at 55-56 (Hughes admitting he had a feeling that he was not allowed to enter the purchase agreement). Because Big Bear has the burden of showing actual authority and has presented no evidence of such authority, the Court finds that Hughes did not have actual authority. *Celotex*, 477 U.S. at 322.

The Court cannot reach the same conclusion with respect to apparent authority. When a "principal has intentionally or inadvertently induced third persons to believe that . . . a person was its agent although no actual or express authority was conferred on him as agent," apparent authority exists. *Ruesga*, 161 P.3d at 1261. To show apparent authority, Big Bear must show (1) that LAI engaged in conduct that led Big Bear to believe that Hughes had apparent authority to enter the Purchase Contract, and (2) that Big Bear's reliance on the apparent authority was reasonable. *Anchor Equities, Ltd. v. Joya*, 773 P.2d 1022, 1025-26 (Ariz. App. 1989).

Big Bear has presented evidence that LAI hired Hughes as a Regional Sales Manager to sell games, sent Hughes to the trade show where he met Pelto, and identified him with a

booth decorated with LAI's logo, LAI clothing, and a nametag to market and promote LAI games. Dkt. #35 at 7-8. Big Bear contends that these actions by LAI made it reasonable for Big Bear to believe that Hughes had authority to enter into the Purchase Contract. Although these facts are not in dispute, the inferences to be drawn from them are hotly contested. Big Bear argues that its president met LAI's Regional Sales Manager and United States Sales Manager at a trade show and discussed the possibility of Big Bear becoming a distributor. The Regional Sales Manager gave Pelto a price sheet and invited Pelto to LAI's Texas office to discuss the agreement further. From what Pelto saw, Hughes as a salesman was authorized to enter into a sales contract on behalf of LAI. In contrast, LAI argues that it merely sent a newly-hired sales representative to a trade show to stand at a booth that could have been staffed by a model or a child, that the representative was so excited to make a sale that he signed a contract he knew he had no authority to sign, and that LAI, upon learning of the agreement, quickly terminated it. LAI contends that these facts provide no reasonable basis upon which Big Bear could conclude that Hughes had authority to bind LAI.

"In cases in which the evidence is conflicting, or susceptible to different reasonable inferences, the nature and extent of an agent's authority is a question of fact to be determined by the trier of fact. The question is one of law for the court only where different reasonable and logical inferences may not be drawn from the evidence." *First Union Nat'l Bank v. Brown*, 603 S.E.2d 808, 815 (N.C. App. 2004); *see also Bailey v. Worton*, 752 So.2d 470, 475 (Miss. App. 2000) ("The fact finder must determine whether there is sufficient evidence to meet the . . . test for recovery under the theory of apparent authority[.]"); *John Scowcroft & Sons Co. v. Roselle*, 289 P.2d 621, 623 (Idaho 1955) ("Where existence of agency is disputed, it is a question of fact for the jury."); *LeBlanc v. New England Raceway, LLC*, 976 A.2d 750, 759-60 (Conn. App. 2009) ("Whether apparent authority exists is a question of fact, requiring the trier of fact to evaluate the parties' conduct in light of the attenuating circumstances."). Because differing inferences regarding Hughes' apparent authority can be drawn from the facts in this case, apparent authority must be resolved at trial and cannot be

decided on summary judgment.[4]

   **D.   Damages.**

LAI contends that Big Bear cannot prove lost profits with any reasonable certainty. Dkt. #33 at 14-17.   To recover lost profits damages, a plaintiff must provide evidence "to furnish a reasonably certain factual basis for computation of probable losses." *Rancho Pescado, Inc. v. Nw. Mut. Life Ins. Co.*, 680 P.2d 1235, 1245 (Ariz. Ct. App. 1984).  The standard is "that the existence of the profits cannot be nebulous, although there can be some uncertainty in fixing the measure or extent of those profits which certainly would exist." *Schuldes v. Nat'l Surety Corp.*, 557 P.2d 543, 548 (Ariz. App. 1976).

Big Bear has submitted a Damage Report by Robert M. Semple, CPA, outlining the financial damages that he contends were sustained by Big Bear. Dkt. #36-2 at 32-44. LAI contends that this report is based on speculation because it is undisputed that Big Bear did not lose any actual orders of Stacker machines as a result of LAI's conduct. Dkt. #33 at 15. LAI argues that the evidence of lost sales consists of phone calls made to potential customers who did not finalize sales or negotiate sale prices. *Id.* at 15. Semple, however, looked at Big Bear's actual sales during the short period when LAI supplied it with Stackers Machines to estimate the sales that would have occurred had LAI continue supplying the machines. Dkt. #36-2 at 35-36. The Court cannot say as a matter of law that such an approach is unfounded. The trier of fact will be required to consider the reasonableness of such an approach to damages in light of all the evidence.

LAI contends that Big Bear cannot collect damages for losing sales of machines Big

---

[4] It is not clear that Big Bear is entitled to a jury trial on its promissory estoppel claim. Promissory estoppel is an equitable remedy. *Double AA Builders, Ltd. v. Grand State Constr., L.L.C.*, 114 P.3d 835, 843 (Ariz. App. 2005). Big Bear may not be entitled to a jury trial on such a claim. *See In re Estate of Newman*, 196 P.3d 863, 877 (Ariz. App. 2008). The parties should address this issue in their proposed final pretrial order. The parties should also address Restatement (Second) of Contracts § 90(1) (1981) and its statement that "[t]he remedy granted for breach may be limited as justice requires." For example, the parties should consider whether a promissory estoppel remedy allows the recovery of lost profits, or should be limited to lost out-of-pocket expenses.

Bear was never required to purchase. In support of this argument, LAI cites to a Fifth Circuit case in which the court was applying Texas law on damages. *See Hiller v. Mfrs. Prod. Research Group of N. Am., Inc.*, 59 F.3d 1514 (5th Cir. 1995). It is clear, both from the contract itself and the briefs of the parties, however, that Arizona law applies here. *See* Dkt. #42-1 at 4 ("This Contract shall be governed . . . in accordance with . . . the laws of the . . . State of Arizona").

LAI argues that Big Bear cannot recover lost profits that it could have prevented by cover, particularly given that there were similar goods available in the marketplace. Dkt. #33 at 16. While LAI may be correct that Big Bear cannot recover for damages that could have been avoided by reasonable effort, *see Coury Bros. Ranches, Inc. v. Ellsworth*, 446 P.2d 458, 463 (Ariz. 1968), the suitability of cover – replacements for the Stackers machines – is a question of fact that cannot be decided on summary judgment.

**IT IS ORDERED:**

1. Big Bear's motion for partial summary judgment (Dkt. #37) is **denied**.
2. LAI's motion for summary judgment (Dkt. #33) is **granted in part and denied in part**.
3. The Court will set a final pretrial conference by separate order.

DATED this 2nd day of March, 2010.

_David G. Campbell_
David G. Campbell
United States District Judge